UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| FRANCISCO M.-L., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, <br> Acting Commissioner of Social Security, <br><br> Defendant. | Case No. 21 C 3524 <br><br> Magistrate Judge Sunil R. Harjani |

**MEMORANDUM OPINION AND ORDER**

Francisco M.-L. seeks to reverse the final decision of the Commissioner of Social Security denying his claim for Disability Insurance Benefits ("DIB"). The Commissioner has filed a motion for summary judgment seeking to affirm the ALJ's decision. For the reasons that follow, Plaintiff's request for reversal and remand [21] is granted, the Commissioner's motion for summary judgment [26] is denied, and the case is remanded for further proceedings.

**I. BACKGROUND**

Francisco applied for DIB in September 2018, alleging disability since May 10, 2017, when he was 47 years old, due to HIV, chronic fatigue, inability to concentrate due to fatigue, and joint pain, especially in the upper extremities. Francisco is HIV positive and was diagnosed with chronic fatigue syndrome/myalgic encephalomyelitis ("CFS/ME") in 2009. Dr. James F. Sullivan, Francisco's infectious disease specialist, explained that "CFS/ME in patients with HIV/AIDS is prevalent in about 70% of patients who have been living with HIV for a long period of time and who have been taking antiretroviral therapy for long periods of time; [Francisco] has been HIV positive since 1992 and has been taking antiretroviral therapy since 1999." (R. 878). Dr. Sullivan acknowledged that the "full effects of long-term infection with HIV, as well as, the full effects of

long-term exposure to antiretroviral therapy aren't fully understood at this point." *Id*. However, Dr. Sullivan continued, "it's somewhat understood that the long-term effects of both the infection and the treatment are the cause of CFS/ME in patients like [Francisco]." *Id*.

Francisco suffered a sustained episode of fatigue in 2009 and was placed on long-term disability. (R. 45, 670). He returned to work in 2011. *Id*. at 45. Francisco suffered another episode of fatigue in 2014-2015, which led to him losing his job in April 2015. *Id*. at 444-45, 670. In October 2015, Francisco began working for Alliant Credit Union as a manager of data analytics. *Id*. at 255, 342. A little more than a year later, in December 2016, Francisco reported extreme fatigue, joint pains, problems thinking, remembering or concentrating, feeling dizzy or sick, and an inability to concentrate. *Id*. at 878. His symptoms did not improve, and Francisco last worked for Alliant in May 2017. When he stopped working, Francisco received short-term and long-term disability benefits and a severance package from Alliant. Francisco has a Bachelor of Science degree in computer science and earned an MBA from the Kelley School of Business at Indiana University in 2008.

Following a hearing, ALJ Michael Pendola issued a decision on January 8, 2021, finding that Francisco was not disabled. (R. 13-24). The ALJ determined that Francisco had the severe impairments of asymptomatic HIV and chronic fatigue syndrome/myalgic encephalomyelitis. *Id*. at 16. The ALJ found that Francisco's sleep-related breathing disorder was a non-severe impairment. *Id*. The ALJ further found that Francisco's depression, anxiety, and post-traumatic stress were not severe impairments and caused only mild limitations in the three paragraph B criteria except interacting with others. *Id*. at 16-18. The ALJ determined that Francisco's impairments did not meet or medically equal a listed impairment. *Id*. at 18. The ALJ then concluded that Francisco had the residual functional capacity ("RFC") to perform sedentary work

except that he can: never climb ladders, ropes, or scaffolding and only occasionally climb ramps or stairs; occasionally balance, stoop, kneel, crouch and crawl; and never be exposed to hazardous machinery or unprotected heights. *Id*. at 18-23. The ALJ determined that Francisco could perform his past relevant work as an information manager consultant. *Id*. at 23-24. As a result, the ALJ found Francisco not disabled from May 10, 2017 through the date of the decision. *Id*. at 24.

## II. DISCUSSION

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the ALJ conducts a five-step inquiry: (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals any of the listings found in the regulations, *see* 20 C.F.R. § 404, Subpt. P, App. 1 (2004); (4) whether the claimant is unable to perform his former occupation; and (5) whether the claimant is unable to perform any other available work in light of his age, education, and work experience. 20 C.F.R. § 404.1520(a)(4); *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000). These steps are to be performed sequentially. 20 C.F.R. § 404.1520(a)(4). "An affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than Step 3, ends the inquiry and leads to a determination that a claimant is not disabled." *Clifford*, 227 F.3d at 868 (internal quotation marks omitted).

Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon a legal error. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla" and means only

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, --- U.S. ----, 139 S.Ct. 1148, 1154 (2019) (internal quotation marks omitted). In reviewing an ALJ's decision, the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination." *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022) (internal quotation marks omitted). Nevertheless, where the ALJ's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele*, 290 F.3d at 940.

Francisco makes three main arguments in challenging the ALJ's decision, including: (1) the ALJ improperly evaluated the opinions of his treating infectious disease specialist, Dr. Sullivan, and a one-time examining physician, Dr. Daniel Bakston; (2) the ALJ improperly assessed Francisco's physical and mental RFC; and (3) the ALJ incorrectly assessed his subjective symptoms. For the reasons explained below, the Court agrees with Francisco that the ALJ erred in assessing Dr. Bakston's opinion. Because the errors in evaluating this medical opinion combined with some of the same factual errors in the ALJ's subjective symptom analysis warrant remand, the Court does not reach Francisco's remaining arguments.

Francisco asserts that the ALJ failed to properly assess the opinion of examining physician Daniel Bakston, M.D., M.P.H., FACOEM. "An ALJ may not discount the opinion of an examining physician without a valid explanation." *Paul v. Berryhill*, 760 F. App'x 460, 464 (7th Cir. 2019) (citing *Beardsley v. Covlin*, 758 F.3d 834, 839 (7th Cir. 2014)). The ALJ's evaluation of the medical opinion evidence in Francisco's case was subject to new regulations pertaining to claims filed on or after March 27, 2017. 20 C.F.R. § 404.1520c (2017). Under the new regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's]

4

medical sources." 20 C.F.R. § 404.1520c(a). An ALJ need only articulate "how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). The regulations direct the ALJ to consider the persuasiveness of medical opinions using several listed factors, including supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(a), (c).

The most important factors when evaluating persuasiveness are supportability and consistency. 20 C.F.R. § 404.1520c(a). An ALJ must explain how he considered the factors of supportability and consistency in his decision, but he is not required to explain how he considered the other factors. 20 C.F.R. § 404.1520c(b)(2). In assessing supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Regarding consistency, "[t]he more consistent a medical opinion . . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

On July 18, 2018, Dr. Bakston performed an independent medical evaluation in connection with Francisco's claim for private long-term disability benefits. (R. 751-66). Francisco reported symptoms of fatigue, weakness, weight gain, low back pain, bilateral hand pain, occasional headaches, memory loss, and anxiety. *Id*. at 752. Dr. Bakston's report provided an extensive review and summary of Francisco's medical records, including a functional capacity evaluation ("FCE") performed on May 23, 2018. *Id*. at 753-62. Dr. Bakston described the results of the FCE,

5

which showed that Francisco was unable to perform even sedentary work, as valid. *Id*. at 763.[1] Dr. Bakston also reviewed a June 13, 2018 video interview with Francisco in which he discusses his prior job's travel responsibilities and some of his activities and symptoms. *Id*. at 762-63.

Regarding Francisco's HIV+ status, Dr. Bakston noted that Francisco had been stable on Intelence and Truvida and is monitored by his infectious disease specialist. (R. 765). Dr. Bakston further noted that Francisco's CD4 counts had been dropping since September 26, 2014 and have been below normal since February 3, 2016. *Id*. at 764. Dr. Bakston wrote that Francisco reported taking Lexapro and Wellbutrin for anxiety. *Id*. at 765. He stated that the records demonstrated a possible underlying depression but Francisco denied any symptoms of depression. *Id*. at 752, 765. In any event, Dr. Bakston explained that medications used to treat Francisco's anxiety would also be used in the treatment of depression. *Id*. at 765.

In his report, Dr. Bakston wrote that Francisco was "discovered to be asleep in a chair in the exam room." (R. 752). Moreover, the neurologic portion of Dr. Bakston's physical examination revealed: "Romberg equivocal (although [Francisco] did not have a loss of balance he was unsteady and demonstrated lower extremity fatigue and tremor during provocation)." *Id*. at 753. Dr. Bakston also noted Francisco's abnormal heel-to-shin test bilaterally and that he was "[u]nable to stand on one leg without assistance bilaterally." *Id*. Dr. Bakston also noted deficits in heel/toe walking. *Id*. at 764. According to Dr. Bakston, the physical exam's demonstration of an involuntary bilateral lower extremity muscle tremor when provoked with Romberg's test and deficits with heel/toe walking, his ability to stand on one leg without assistance and the heel to

---

[1] The FCE is not in the record and was never mentioned in the ALJ's decision. As summarized in Dr. Bakston's report, at the FCE in May 2018, Francisco was "unable to sit or stand for a continuous 30 minutes" or walk for a mile. (R. 759). At the conclusion of the FCE, Ahmed Hassan, PT, MS, DPT, wrote, "The patient's current physical demand level affects his ability to maintain one position for over 20 minutes that makes the patient unfit to retain employment even under sedentary restrictions." *Id*.

6

shin maneuver "suggest an as of yet unidentified neurological condition or progression of HIV both of which may be consistent with fatigue, memory loss and concentration deficits." *Id*. at 764.

Dr. Bakston determined that Francisco's "fatigue, memory loss, difficulty concentrating and sleep disturbance are prominent and functionally impairing." (R. 763). He added that it was unclear whether Francisco's symptoms of fatigue, memory loss, and impaired concentration and attention were due to poorly controlled or undertreated sleep apnea, progression of HIV or a combination of both. *Id*. at 764. In response to a question asking for "a description of claimant's functional impairment, if any, and outline how they would translate into limitations and restrictions from 05/06/17 to the present," Dr. Bakston stated:

> In regard to the fatigue due to HIV, sleep apnea or combination of the two, it is not recommended that the claimant operate machinery or drive vehicles. The claimant will not be able to tolerate any one task or activity for a prolonged period of time (greater than 30 minutes) regardless [of] if it is seated or standing and will impact his ability to travel. He has limitations in standing, walking, sitting, stooping, bending, twisting, climbing crouching, overhead reaching, lifting, carrying, pushing and pulling. The claimant will furthermore not be able to participate in the following duties or activities (due to impaired short term memory as well as with deficits in concentration and attention): immediate recall of new facts, attention to detail, fast paced job tasks, organization and coordination of projects.

*Id*.

The ALJ rejected Dr. Bakston's opinion because the opined limitations were purportedly not well supported and inconsistent with the evidence in the record. (R. 22). The Court finds several errors in the ALJ's assessment of Dr. Bakston's opinions which require remand. First, the ALJ noted that Dr. Bakston found that Francisco "could not perform any task for more than thirty minutes and that he had physical limitations, but the degree of his alleged physical limitations was not indicated by Dr. Bakston." *Id*. at 20. The ALJ then discounted Dr. Bakston's opinion because it was "vague and not couched in vocationally relevant terms as he did not identify what areas the claimant's physical limitations affected or to what extent he was limited." *Id*. at 22. The Court

disagrees. Based on his physical examination, review of Francisco's medical records, and the results of the FCE, which Dr. Bakston found valid, Dr. Bakston opined that Francisco could not perform "any one task or activity for a prolonged period of time," which he defined as "greater than 30 minutes." *Id*. at 764. The Court reads Dr. Bakston's report as indicating that Francisco would not be able to perform any one task or activity, including physical tasks or activities, for greater than 30 minutes at a time. That is to say, the Court understands Dr. Bakston to have limited Francisco in all areas of mental and physical functioning to 30 minutes at one time.

Moreover, Dr. Bakston's finding that Francisco should be limited to any one task or activity for 30 minutes is not vague and does pertain to Francisco's vocational functioning. The ability to do certain tasks or activities for a certain amount of time at one time is vocationally relevant and can be incorporated into an RFC. *Cf. Acosta v. Comm'r of Soc. Sec.*, 2018 WL 7254256, at *9-10 (E.D. Mich. Sept. 6, 2018), *report and recommendation adopted*, 2019 WL 275931 (E.D. Mich. Jan. 22, 2019) (holding that treating physician's "vague" opinions could not be "translate[d] into functional limitations that [could] be properly incorporated into an RFC," because the opinions "did not explain how plaintiff was limited or whether she could only do certain activities for a certain amount of time each day"). The ALJ did not explain why the 30-minute limitation on Francisco's tasks and activities at one time is vague and not a specific vocationally defined limitation associated with Francisco's impairments. Similarly, in defense of the ALJ's conclusion in this regard, the Commissioner states only that "Dr. Bakston did not explain the extent of plaintiff's limitation or provide specifics." Doc. 27 at 12-14. But, like the ALJ, the Commissioner does not even attempt to explain why a limitation to performing any task or activity for no more than 30 minutes at a time is not a specific functional limitation and she fails to cite any authority supporting that contention. Thus, the ALJ's first stated reason for rejecting Dr. Bakston's opinion

8

is not a legitimate reason to discount the opinion. *See Paul*, 760 F. App'x at 464 (finding insufficient the ALJ's conclusion that an opinion was "vague and not specific in terms of functioning" where "the ALJ did not substantiate this finding," the consultative examining physician's opinion was "sufficiently specific," and the ALJ should have sought additional clarification from the physician before discounting the opinion); *Anna K. v. Saul*, 2020 WL 2324343, at *23 (N.D. Ill. May 11, 2020) (where examining physician limited claimant to sitting for two hours, standing for one hour, and walking for 30 minutes, the examining physician's opinion was not "vague" and that to "[t]he extent the ALJ needed more specificity as to the duration of these exertional limitations, she should have sought clarification instead of simply discounting his opinion.").

The second reason the ALJ gave for discrediting Dr. Bakston's opinion is also unconvincing. After physically examining Francisco and conducting a review of his medical records, Dr. Bakston concluded that Francisco will "not be able to participate in the following duties or activities (due to impaired short term memory as well as with deficits in concentration and attention): immediate recall of new facts, attention to detail, fast paced job tasks, organization or coordination of projects." (R. 764). The ALJ rejected Dr. Bakston's opinion in this regard, stating that "while [Dr. Bakston] indicated that [Francisco] had memory loss, difficulty concentrating and could not perform any task for more than thirty minutes at one time, there is no indication that Dr. Bakston performed any type of mental status exam during his one-time examination of [Francisco]." (R. 22). At the same time, however, the ALJ found persuasive the

opinions of the state agency psychiatric consultants who never examined Francisco and who based their assessments on a review of Francisco's records.[2]

Under the regulations, an ALJ generally gives more weight to the medical opinion of a source who has examined a claimant than to the medical opinion of a medical source who has not examined a claimant. 20 C.F.R. § 404.1527(c)(1); *Martin v. Saul*, 950 F.3d 369, 375 (7th Cir. 2020) (citing 20 C.F.R. § 404.1520c(c)(3)(v)) ("an examining doctor may have more insights than a doctor reviewing evidence in a folder."). To be sure, Dr. Bakston did not perform a mental status exam, but neither did the state agency consulting psychologists, whose opinions the ALJ found persuasive. Therefore, the Court finds the ALJ's second reason in and of itself cannot logically suffice for the ALJ to favor the state agency psychologists' opinions over that of Dr. Bakston's opinion. *See Paul,* 760 F. App'x at 464 (finding that the ALJ wrongly discounted the opinion of an examining physician "for being based on a one-time examination" when, at the same time, he gave "great weight" to the opinion of a non-examining physician whose opinion was based on a one-time review of claimant's mental health-records).

The ALJ gave a third reason for discrediting Dr. Bakston's opinion. He stated: "while Dr. Bakston noted [Francisco] had some type of physical limitations as well as mental limitations, his own exam and the other exams in the record showed no abnormalities in the claimant's physical functioning, attention level and that he was consistently alert and well-oriented." (R. 22). An ALJ

---

[2] The Court notes that although the ALJ found persuasive the non-examining state agency psychological consultants' opinions, dated August 2019 and April 2020, respectively, that Francisco's mental impairments were non-severe, they did not review Dr. Bakston's report or records from Francisco's mental health treatment with Eva Ponder, Psy.D., LCSW, from September 2019 through April 1, 2020. (R. 87, 103). The Court also notes that the state agency medical consultants did not review Dr. Bakston's report. The ALJ was required to consider whether the state agency consultants were familiar "with other evidence in the claim." 20 C.F.R. § 404.1520c(c)(5). However, the ALJ did not address the state agency medical or psychological consultants' familiarity with Dr. Bakston's opinion or Dr. Ponder's treatment records.

10

may discount a physician's opinion if it is internally inconsistent or inconsistent with other evidence in the record. *Chambers v. Saul*, 861 F. App'x 95, 101 (7th Cir. 2021) ("Medical opinions may be discounted if they are inconsistent with the record as a whole."); *Johnson v. Berryhill*, 745 F. App'x 247, 250 (7th Cir. 2018) ("Medical evidence may be discounted if it is internally inconsistent."). Here, however, the ALJ's conclusion about inconsistencies is problematic as it is based on several factual errors. *Beardsley*, 758 F.3d at 837 ("reversal and remand may be required . . . if the ALJ based the decision on serious factual mistakes or omissions."); *Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014) (remanding where, among other errors, "the ALJ made a blatant factual error."). First, contrary to the ALJ's statement, Dr. Bakston actually noted several issues with respect to Francisco's physical examination: "involuntary bilateral lower extremity muscle tremor when provoked with Romberg's test" and "deficits with heel/toe walking, his ability to stand on one leg without assistance and the heel to shin maneuver." (R. 764). Thus, the ALJ was incorrect that Dr. Bakston's exam "showed no abnormalities in claimant's physical functioning." *Id*. at 22; *see also id*. at 20 (ALJ stating "no physical abnormalities were noted in any area on exam" by Dr. Bakston). The ALJ also failed to fairly characterize the record when he said Dr. Bakston's exam showed that Francisco was alert. Although Dr. Bakston found Francisco "alert and oriented x3" during the physical examination, Francisco was also found asleep in a chair in the exam room, which the ALJ did not mention in his weighing of the persuasiveness of Dr. Bakston's opinion. *Id*. at 752, 753.[3]

Second and regarding Dr. Bakston's recommended mental functional limitations based on Francisco's impaired short-term memory and deficits in concentration, the ALJ stated that "other

---

[3] In summarizing Dr. Bakston's report earlier in the decision, the ALJ did note that Dr. Bakston found Francisco asleep in a chair in the exam room. (R. 20); *see also id*. at 23 (ALJ noting "the one occasion [Francisco] was sleeping in the waiting room").

11

exams in the record showed no abnormalities in the claimant's . . . attention level and that he was consistently alert and well oriented." (R. 22). But the ALJ ignored several other portions of the record where exams documented concentration, attention, memory and alertness issues. For example, at a December 22, 2017 psychological consultative exam, Jeffrey Karr, Ph.D., noted that "[f]rom the outset, [Francisco's] affect was heightened. He was visibly anxious, exhibiting rapid, pressured speech, accompanied by periodic anxious laughter . . . . He did at times appear discouraged, exhibiting related mood-dysphoria." (R. 364). Dr. Karr noted that Francisco reported ongoing related symptoms and that two months prior, he saw a psychiatrist who prescribed Strattera to assist with concentration. *Id*. at 364, 365. Furthermore, Phyllis Tolley, Psy.D., conducted a consultative psychological examination on August 10, 2019. *Id*. at 417-18. Dr. Tolley observed that "[i]n addition to hypersomnia and impaired concentration, [Francisco] demonstrated difficulties coping with his ongoing medical conditions." *Id*. at 418. Dr. Tolley's mental status examination revealed fair immediate recall in that Francisco could recall 6 digits forward and 4 digits backward and poor delayed word recall in that he could recall only 2 of 3 items. *Id*. Additionally, with respect to Francisco's alertness at other exams in the record, at seven appointments between December 2019 and February 2020, Dr. Ponder, Francisco's treating psychologist, described him as "drowsy" rather than "alert." *Id*. at 909, 913, 918, 923, 928, 933, 938, 992. The ALJ did not mention these findings by Drs. Karr, Tolley, or Ponder in his decision or evaluate the consistency of their findings with Dr. Bakston's opinion. *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022) ("although ALJs do not need to address every piece of evidence in the record, an ALJ may not ignore an entire line of evidence contrary to its ruling.").

This leads to another problem with the ALJ's decision which may have affected the RFC determination as well: the ALJ's subjective symptom evaluation was based on some of the same

12

factual errors. For instance, the ALJ discounted Francisco's subjective symptom allegation that his fatigue caused issues with his ability to concentrate and perform other basic mental activity because "none of the mental status exams in the record showed any attention deficits or other cognitive deficits." (R. 23). In fact, as just detailed, Dr. Tolley found that Francisco's concentration was impaired, his immediate recall was fair, and his delayed word recall was poor. *Id*. at 365, 418. And Dr. Karr's notes indicate that Francisco was prescribed Strattera to assist with concentration.[4] In discrediting Francisco's subjective symptoms, the ALJ further misstated the record in his assertion that "the exams also consistently showed that [Francisco] was alert, cooperative and well oriented during appointments with treatment providers, other than the one occasion he was sleeping in the waiting room when he was examined in connection with his private benefits in July 2019." (R. 23). Again, this statement is factually inaccurate because Dr. Ponder observed Francisco as "drowsy" and not "alert" during numerous visits. *Id*. at 909, 913, 918, 923, 928, 933, 938. The ALJ did not discuss these facts in his subjective symptom analysis or even acknowledge them anywhere in his decision. *See Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020) (ALJ may not engage in "impermissible cherry-picking" by "highlighting facts that support a finding of non-disability while ignoring evidence to the contrary.").

Finally, the Court notes the ALJ's decision was based on another serious factual error regarding the history of Francisco's mental health treatment, which may have impacted the RFC determination. The ALJ found the opinions of the state agency psychological consultants that Francisco's mental impairments were not severe persuasive in part because they were consistent with the medical evidence, including that "there [was] no indication in the record that [Francisco]

---

[4] Similarly problematic is the ALJ's erroneous statement during his Paragraph B analysis at step two that Drs. Karr's and Tolley's mental status exams "showed no memory deficits" and "no deficits in his attention or concentration." (R. 16, 17).

sought or received any mental health treatment until he began counseling in September 2019, over two years after his alleged onset date." (R. 21). In his subjective symptom analysis, the ALJ similarly discredited Francisco's testimony about the impact of his mental impairments because "the medical record indicates that the only mental health treatment he received was counseling from September 2019 until April 1, 2020. *Id*. at 23. But the record indicates otherwise. The record shows that Francisco began seeing a psychiatrist, Dr. Ndidi Onyejiaka, in April 2015. (R. 445, 880). During that round of therapy, Francisco uncovered childhood sexual abuse and began taking Wellbutrin, Lexapro, and Xanax, with his Lexapro dose increased in June 2015. *Id*. He continued to take Lexapro and Wellbutrin on a daily basis and Xanax as need for anxiety. *Id*. at 443, 445. The record further shows that Francisco saw two psychiatrists in 2017, Dr. Rose Gomez and Dr. Vijay Jayachandran, and he tried Adderall and Strattera. *Id*. at 350, 445, 673, 751, 755, 758, 761. The ALJ's failure to understand that Francisco saw multiple psychiatrists and received mental health treatment in the form of psychotropic medications before September 2019, including both before and after his alleged onset date, also requires remand. Thus, several factual errors affected numerous aspects of the ALJ's analysis, including the step two Paragraph B discussion, his weighing of Dr. Bakston's opinion, and his evaluation of Francisco's subjective symptoms allegations.

      In sum, given the inadequate and inaccurate explanations given by the ALJ, the ALJ's decision is not supported by substantial evidence and a reasonable mind cannot accept the evidence as adequate to support the conclusion. Specifically, the ALJ did not properly consider the supportability and consistency factors in assessing Dr. Bakston's opinion evidence. And because the ALJ's step four RFC determination is partially based on the medical opinion evidence and the subjective symptom determination, the errors in evaluating Dr. Bakston's opinion and numerous

factual errors related to the ALJ's acceptance of the state agency psychologists' opinions and rejection of Francisco's alleged symptoms collectively undermine the Court's confidence in the RFC determination as well. The Court further finds that the ALJ's lack of adequate explanation and analysis of Dr. Bakston's opinion was not harmless, as the inclusion of his recommended limitations of precluding any one task or activity for greater than 30 minutes and no activities requiring immediate recall of new facts, attention to detail, fast paced jobs, and organization and coordination of projects could be outcome-determinative. For instance, if Dr. Bakston's recommended mental limitations restricted Francisco to performing simple and routine tasks, he would be unable to perform his past work as an information manager consultant, which the vocational expert described as sedentary and "very skilled." (R. 69-70). Because the Court cannot predict with "great confidence" that the RFC would not change on remand even if the ALJ were to properly consider the persuasive value of Dr. Bakston's opinion and correct the numerous factual errors he made, Francisco is entitled to a remand. *Butler v. Kijakazi*, 4 F.4th 498, 504 (7th Cir. 2021). On remand, after determining the persuasiveness to be given Dr. Bakston's opinion and correcting the various factual errors, the ALJ shall then reevaluate Francisco's physical and mental impairments and RFC, considering all the evidence of record.

### III. CONCLUSION

For these reasons, Plaintiff's request for reversal and remand [21] is granted and the Acting Commissioner's motion for summary judgment [26] is denied. The ALJ's decision is reversed and the case is remanded to the agency for further proceedings consistent with this Opinion.

**SO ORDERED.**

Dated: September 29, 2022

Sunil R. Harjani
United States Magistrate Judge